UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6273CR-HUCK

UNITED STATES OF AMERICA,

vs.

FREDERICK MASSARO,
    Defendant.
_____/

### REQUEST FOR SPECIFIC BRADY MATERIAL AND MEMORANDUM OF LAW AND FOR IMMEDIATE DISCLOSURE; POTENTIAL DEATH CASE

The defendant, through counsel, and pursuant to the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 971 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyle v. Whitley*, __ U.S. __, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), and Fed.R.Cr.P. 16, respectfully moves for the entry of an order requiring the government to disclose and provide the following specific information and materials known or that with the exercise of due diligence should be known to the government as it is within the files of the DEA and is arguably favorable to this defendant on the issues of guilt or punishment, including impeachment information and other information and evidence tending to discredit the government's witnesses, in addition to any other matters known to the government that may be exculpatory or otherwise favorable to the defendant particularly as to and in light of the allegations of first degree murder;

1.   All information and records revealing any potential impairment of the capacity of any prospective government witness to observe, recollect and testify about the events giving rise to the charges filed in this case, including impairments of sight, hearing, memory, language or other physical or psychological disability.

**NON-COMPLIANCE OF S.D. Fla. L.R.** _____

2. All information and records indicating that any prospective government witness 1) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time span alleged in the indictment filed in this case; or 2) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years.

3. All information and records indicating that any prospective government witness 1) may have used cocaine, marijuana or other controlled substance or used alcohol to excess at any time during the time span alleged in the indictment filed in this case; or 2) sought or received treatment for any substance abuse problem [including alcohol] at any time within the past five years.

4. All information, records and transcripts which in any way indicate or reveal that any prospective government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to:

    a. any state or federal law enforcement officer or agency;

    b. any state or federal grand jury;

    c. any state or federal trial court while testifying at trial and/or any related or preliminary proceeding.

5. The results of any polygraph examination performed on any potential government witness a well as any information concerning the failure of any potential government witness to submit to a polygraph examination, particularly Ariel Hernandez. Too, while the Defendant will become unfortunately repetitive, the Defendant under *Brady*, *Kyle* and such cases request immediate disclosure of the numerous conflicting interviews with law enforcement as to the Defendant's involvement or lack thereof in the murder charge, including jail recordings of the Defendant to the press, his relatives and others.

6. Any audio or video tape recording that the government now claims is inaudible, unusable or failed to operate during the course of the investigation of this case.

7. Any document or other tangible object seized or created by the government in the course of this case that the government does not intend to introduce in evidence at trial.

8. Any written or recorded summaries of statements made by any defendant following arrest, whether or not signed by the defendant.

9. The substance of any co-conspirator statement that the government intends to offer in evidence pursuant to Fed. R. Evid. 801(d)(2)(E) and any information or records concerning the lack of credibility of such co-conspirator, including: reputation for untruthfulness or fraud; prior arrest for or conviction of a felony or a crime involving dishonesty; prior misconduct reflecting on trustworthiness; false exculpatory statement made by the declarant; or other inconsistent statement. Considering the charges herein disclosure should be immediate.

10. In addition to the records of prior convictions required to be disclosed pursuant to paragraph E of the Court's standing discovery order:

   a. records and information regarding any uncharged criminal conduct attributable to any potential government witness;

   b. FBI "rap sheets", NADDIS, EPIC, NCIC, NLETS, ATS and TECS records regarding any potential government witness;

   c. records and information regarding prior misconduct or bad acts attributable to each potential government witness and bearing on said witness's truthfulness;

   d. records and information regarding the dismissal of any criminal charges contemplated or filed against any potential government witness.

11. In addition to information regarding payments, promises of immunity, leniency, preferential treatment or other inducements made to prospective government witnesses required to

3

be disclosed pursuant to paragraph D of the standing discovery order, any records or information regarding payments, promises of immunity, leniency, preferential treatment offered or afforded to any family member, friend or associate or any prospective witness in exchange for said witness' cooperation.

12. Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, etc., by INS) made by the government to any prospective government witness or family members and associates of the witness, including information as to the underlying conduct precipitating such investigations.

13. Any statement made or information or document provided by a prospective government witness that conflicts in part or in whole with: 1) the statement of another prospective witness; 2) a prior statement made by the same government witness, with regard to the subject matter of the expected trial testimony of the witness; or 3) any other document or witness.

14. The name and current whereabouts of any eyewitness to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by or summary of interview of such witness.

15. Any information or records concerning the destruction or loss of any physical evidence, recording or object during the investigation of prosecution of the instant offense.

16. A summary of any scientific analysis or expert opinion that the government intends to introduce at trial including a summary of the basis for such scientific analysis or expert opinion.

17. The instant case is a first degree murder, federal death penalty case. Discovery and disclosure should be immediate. The witness Hernandez is being prosecuted in State Court in Florida, where all discovery is being withheld from the public. The Assistant State Attorney claims

4

that is because of the Federal Government. If such be the case, and the Government is having a State prosecutor withhold normally produced matters, this Court should intervene via this Motion.

### *MEMORANDUM OF LAW*

### *IMPAIRMENT OF WITNESS BY PHYSICAL OR MENTAL DISABILITY OR SUBSTANCE ABUSE*

In *United States v. Collins*, 472 F.2d 1017, 1018 (5th Cir. 1972), the court noted that a witness' narcotics use is material and the testimony of a narcotics user is to be considered with caution. Similarly, in *United States v. Fowler*, 465 F.2d 664, 668 (D.C. Cir. 1972), the court held that the defendant was entitled to know whether a government witness was a narcotics user.

In *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978), the court held that the testimony of witnesses who had formerly used heroin should be weighed with caution. Although the witnesses had undergone methadone treatment and were no longer using heroin at the time they observed the events of the case, it was left to the jury to "take this information into account in weighing the witness' credibility." *Id*. Thus, it is will established that a defendant is entitled to a jury instruction advising that the testimony of a narcotics user or addict should be considered with care due both to motive to lie and impairment of the ability to accurately observe. See 11th Circuit Pattern Criminal Jury Instructions, Special Instruction 1.3; Fifth Circuit Pattern Criminal Jury Instruction 1.17.

The discoverability of a witness's psychiatric treatment records was recognized by the 11th Circuit in *United States v. Lindstrom*, 698 F.2d 1154, 1167 (11th Cir. 1983). Previously, the 5th Circuit, in *United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974), explained why such impeachment information must be disclosed:

> It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be

> for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know and correctly relate the truth.

Cf. *Powell v. Wiman*, 287 F.2d 275, 278-279 (5th Cir. 1961) (relevance of impeachment by evidence of witness's mental instability).

### *FALSE STATEMENTS BY WITNESS*

In *Mesarosh v. United States*, 352 U.S. 1 (1956), the Supreme Court reversed the defendant's conviction and remanded for a new trial to allow the defendant to present previously undisclosed evidence that the government's key witness testified falsely in similar, but unrelated proceedings. The 11th Circuit recently reaffirmed the vitality of the *Mesarosh* decision in *United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990), holding that the government may not withhold evidence that a witness has made prior false statements in a matter within the jurisdiction of a federal agency. Cf. *United States v. Williams*, 500 F.2d 105, 108 (9th Cir. 1974) (granting new trial under *Mesarosh* to allow defendant to present to jury evidence of witness's false statements in other proceedings).

### *POLYGRAPH RESULTS*

Pursuant to *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989), polygraph examination results are admissible to impeach or bolster any witness's credibility, subject to the district court's exercise of discretion in the admission of evidence. See Fed. R. Evid. 403. Polygraph results which tend to show that a witness has made false or conflicting statements to the government thus are relevant and discoverable. While admissibility issues may be resolved at trial, the underlying facts material to impeachment must be disclosed prior to trial to allow for adequate defense preparation. *Giglio v. United States*, 405 U.S. 150 (1972).

6

### *FAILURE OF WITNESS TO IDENTIFY DEFENDANT*

In *Guerrero v. Beto*, 384 F.2d 886 (5th Cir. 1967), the court reversed the conviction where evidence that a government witness originally failed to identify the defendant in a line-up was not disclosed prior to trial. Similarly, in *United States v. Fernandez*, 506 F.2d 1200, 1205 (2d Cir. 1974), the court held that the indictment should be dismissed if the government persisted in failing to disclose two witnesses who failed to identify the defendant as the perpetrator of the offense. Cf. *Hudson v. Blackburn*, 601 F.2d 785, 789 (5th Cir. 1979) (government has a duty to disclose witness's initial failure to identify defendant in a lineup).

### *AUDIO/VIDEO TAPES CLAIMED TO HAVE FAILED*

The defendant has a right to independently examine and analyze physical evidence to determine if there is material favorable to the accused. In *United States v. Rojas*, 502 F.2d 1042, 1044-1045 (5th Cir. 1974), the court held that the government's duty under Fed. R. Crim. P. 16 with regard to allegedly inaudible tape recordings is satisfied by "good faith efforts to preserve the tape [and to make the same' available to the [defendant]." Similarly, as to any videotape which the government claims malfunctioned or suffers a lack of audibility or visual clarity, the defendant has a right to production of the tape for independent analysis.

### *OBJECTS/DOCUMENTS SEIZED OR CREATED BY GOVERNMENT*

Where the government has no intent to introduce in evidence a writing, recording or physical object seized during the course of the investigation, it may be inferred that such evidence may be favorable to the defendant and discoverable pursuant to *Brady v. Maryland*. Cf. *Jennings v. United States*, 391 F.2d 512, 516 (5th Cir. 1968) (permissible evidentiary inference). Similarly, he government's duty to disclose objects seized upon arrest of a defendant extends beyond evidence

that the government proposes to use in its case-in-chief and includes any possible rebuttal or cross-examination evidence. *United States v. Rodriguez*, 799 F.2d 649 (11th Cir. 1986).

### *RECORDED SUMMARIES OF DEFENDANT'S STATEMENTS*

The best reflection of the substance of a defendant's statements in response to government interrogation is the written summary of such statement preserved in case reports. Fed. R. Crim. P. 16(a)(1)(A), amended effective December 1, 1991, specifically requires the government to furnish to the defendant written summaries of statements made by the defendant.

Moreover, in *United States v. Manetta*, 551 F.2d 1352 (5th Cir. 1977), the court reversed the defendant's conviction where the government failed to disclose that the defendant *declined* to make a formal statement. Defendant Manetta was charged with assault on a fellow inmate. As proof that the defendant was a rational and calculating individual at the time of the assault, the government prevented the testimony of a prison employee who led the defendant away from the scene:

> [Employee]: I had asked him [Manetta] if he had wished to talk about the incident that had [sic] just occurred [the stabbing] and he replied 'no" that he would talk to a lawyer.

*Id*. at 1355. Finding that this statement was critical to the government's contention that the defendant was sane at the tim of the offense, he court held that the failure to disclose the defendant's statement violated Fed. R. Crim. P. 16 and constituted prejudicial, reversible error. *Id*. at 1356.

Thus, the courts have read the statement disclosure rule expansively and the disclosure sought herein is consistent with fair and complete disclosure. Cr. *United States v. Silien*, 825 F.2d 320 (11th Cir. 1987) (government violated Fed. R. Crim. P. 16 by failing to produce INS papers reflecting statement of defendant).

8

## ***CREDIBILITY OF CO-CONSPIRATOR STATEMENTS***

Pursuant to Fed. R. Crim. P. 12(d)(2), the government may be ordered to disclose specific items of evidence on which it intends to rely at trial. Disclosure of co-conspirator statements intended to be offered under Fed. R. Evid. 801(d)(2)(E) was ordered in *United States v. Thevis*, 84 F.R.D. 47, 56-57 (N.D. Ga. 1979) to allow the defense an opportunity to effectively meet and cross-examine such hearsay declarations. Evidence relating to the credibility of such statements should also be produced. In *United States v. Enright*, 579 F.2d 980, 989 (6th Cir. 1978), the court held that "retraction of a previously incriminating and inculpatory statement [which statement was offered at trial by the government under the co-conspirator exception to the hearsay rule] must indeed qualify as material favorable to the defense."

In *United States v. Christopher*, 923 F.2d 1545, 1550-52 (11th Cir. 1991) and *United States v. Allison*, 908 F.2d 1531, 1534 (11th Cir. 1990), the 11th Circuit recently reiterated that the admissibility and weight to be given to co-conspirator hearsay are subject to challenge including: the true identity of the speaker, whether the speaker was a co-conspirator at the time of the statement, whether the statement was made in furtherance of the conspiracy and whether there are any indicia of reliability of the statement. Fed. R. Evid. 806 provides that the party may attack the credibility of the declarant of a statement offered under Fed. R. Evid. 801(d)(2)(E) "by any evidence which would be admissible for those purposes if declarant had testified as a witness."

Thus, under *Giglio v. United States*, the government's duty to disclose "favorable" impeachment material extends to impeachment of the declarant when statements are offered pursuant to Fed. R. Evid. 801(d)(2)(E). Impeachment can only be prepared if the defendant is at least made aware of the identity of the declarant and the content of the statement. Cf. *Thevis*, 84

F.R.D. at 56; see also *United States v. Kubiak*, 704 F.2d 1545, 1549-51 (11th Cir. 1983) (indicted co-conspirator's exculpatory statement is Brady material.

### *WITNESS'S RECORD OF ARRESTS AND MISCONDUCT*

Pursuant to Fed. R. Evid. 608(b), a witness may be cross-examined as to specific instances of conduct "concerning the witness' character for truthfulness or untruthfulness." Thus, courts have held that in given circumstances a witness may be questioned regarding prior arrests not leading to conviction. *United States v. Croucher*, 532 F.2d 1042, 1045 (5th Cir. 1976) (informant witness's full arrest record relevant to showing motive to strike a good bargain with the government).

Similarly, uncharged misconduct of a witness is fair game for impeachment on cross-examination. *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984) (reversible error to refuse to permit cross-examination of government witness as to alleged post-plea drug activities); *United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990) (government witness's misconduct bears directly on credibility); *United States v. Cohen*, 888 F.2d 770, 776, 777 (11th Cir. 1989) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) that prosecution witness had previously concocted and managed a fraudulent scheme); *United States v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) to show that informant had previously entrapped other defendants).

### *PREFERENTIAL TREATMENT GIVEN AND THREATS MADE TO WITNESS AND HIS FAMILY*

The witness's motive to testify in favor of one party and against another is a matter open to discovery and introduction in evidence. Fed. R. Evid. 608. The 11th Circuit Pattern Criminal Jury

Instruction, Special Instructions 1.1, 1.2 and 1.3, highlight the importance of such evidence in judging the credibility of testimony.

> For example, a paid informer, or a witness who has been promised he will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he wants to strike a good bargain with the government.

11th Circuit Pattern Jury Instructions, Special Instruction 1.1. See *United States v. D'Antignac*, 628 F.2d 428, 435-436 n.10 (5th Cir. 1980); *United States v. Abravaya*, 616 F.2d 250 (5th Cir. 1980).

Where there is evidence that the government has threatened a potential witness to obtain the witness's cooperation, such evidence is not only admissible, but may demonstrate unconstitutional interference with the defendant's right to free access to witnesses. *United States v. Hendricksen*, 564 F.2d 197, 198 (5th Cir. 1977); *United States v. Heller*, 830 F.2d 150, 152 (11th Cir. 1987).

Where the preferential treatment or threats extend to the witness's family, the persuasive effect is only enhanced. See *United States v. Nickerson*, 669 F.2d 1016, 1018 (5th Cir. 1982) (cross-examination of informant showed that government had provided benefits to informant's family). That the full details of any government inducements offered to a witness are discoverable and admissible at trial was recently reiterated by the 11th Circuit in *United States v. Williams*, 954 F.2d 668, 671 (11th Cir. 1992). The court held that the "jury has a right to know what may be motivating a witness" even if the amount [of money] paid an informant is felt by the government to be too prejudicial." *Id*. at 672.

### *IDENTITY OF EYEWITNESS THE GOVERNMENT DOES NOT INTEND TO CALL*

The failure of the government to call as a witness an individual who has material evidence and is known to the government and unknown to the defense raises an inference that the witness's testimony may be favorable to the defendant in some respect. *United States v. Nahoom*, 791 F.2d

11

841, 846 (11th Cir. 1986) ("When a witness is peculiarly within the control of one party,... an instruction is appropriate regarding the permissible inference which the jury may draw from the party's failure to call the witness."). Thus, in *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984), the court held:

> [I]t was quite appropriate for the district court to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense.

For that reason, the *Cadet* court ordered pretrial disclosure of witnesses that the government did not intend to call. *Id.*; see also *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (eyewitnesses "are the property of neither the prosecution nor the defense"). Thus, the defendant must be afforded a reasonable opportunity to locate and interview such witnesses.

### *INFORMATION AS TO DESTRUCTION OF EVIDENCE*

Fundamental fairness requires that the defendant be allowed to examine all physical evidence relating to a criminal offense. *Barnard v. Henderson*, 514 F.2d 744, 746 (5th Cir. 1975). In *United States v. O'Neill*, 767 F.2d 780, 786-787 (11th Cir. 1985) the court held that the defendant bears the burden of showing that "... missing evidence would have been material and favorable." When the government's conduct in destroying or losing evidence is reckless or shows bad faith, the burden may shift to the government to disprove materiality. *United States v. Pendas-Martinez*, 845 F.2d 938, 940 n.2 (11th Cir. 1988). As to any destroyed or lost evidence in the instant case, defendant seeks the level of information necessary to investigate the underlying facts and evaluate whether he may present testimony concerning the destruction of evidence and any favorable inferences that may be drawn from the fact of its loss. Cf. *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970).

Fed. R. Crim. P. 16(a)(1)(C) provides for disclosure by the government not only of physical objects material to the defense or intended for introduction in evidence, but also of any tangible thing that belongs to or was obtained from the defendant. No showing of materiality is required for production of government exhibits and objects obtained from the defendant.

> Limiting the rule to situations in which the defendant can show that the evidence is material seems unwise. It may be difficult for a defendant to make this showing if he does not know what the evidence is. For this reason subdivision (a)(1)(C) also contains language to compel disclosure if the government intends to use the property as evidence at the trial or if the property was obtained from or belongs to the defendant.

Fed. R. Crim, P. 16 advisory committee's note. Such evidence is presumed to be material. The government is thus on notice of the presumption of materiality and evidence of the government's failure to preserve objects referred to in fed. R. Crim. P. 16(a)(1)(C) may itself be admissible at trial.

## *SUMMARY OF SCIENTIFIC/EXPERT ANALYSIS*

Paragraph A(6) of the Standing Discovery Order makes reference to disclosure of scientific tests and physical examinations. The spirit of the order extends to the scientific analyses and expert opinions themselves whether or not arrived at as a result of particular physical tests in the instant case. Given the increased use of both scientific and nonscientific expert testimony, one of the most basic discovery needs of counsel is to learn that an expert is expected to testify. See *Gianelli, Criminal Discovery, Scientific Evidence, and DNA*, 44 Vand. L. Rev. 793 (1991); *Symposium on Science and the Rule of Legal Procedure*, 101 F.R.D. 599 (1983). Thus, the courts have held that fairness requires giving adequate notice to the defense of findings and conclusion of government experts to allow defense evaluation of such expert opinions prior to trial. *United States v. Kelly*, 420 F.2d 26, 29 (2d Cir. 1969); *United States v. Barrett*, 703 F.2d 1076, 1081 (9th Cir. 1983).

WHEREFORE the Defendant moves for disclosure and production as stated herein.

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to the following parties listed below, this 30 day of January, 2001.

> HADDAD & HESTER, P.A.
> One Financial Plaza, Suite 2612
> Fort Lauderdale, Florida 33394
> [954] 467-6767
>
> By: /s/ Fred Haddad
> FRED HADDAD
> Florida Bar No. 180891

### CERTIFICATE OF SERVICE

Jeffrey H. Sloman, Esq.
Office of the United States Attorney
500 E. Broward Blvd., 7th Floor
Fort Lauderdale, Florida 33394

Larry LaVecchio, Esq.
Office of the United States Attorney
500 E. Broward Blvd., 7th Floor
Fort Lauderdale, Florida 33394

Richard Houlihan, Esq.
300 Aragon Avenue, Suite 310
Coral Gables, Florida 33134

Samuel Deluca, Esq.
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307

Jeffrey Weinkle, Esq.
1035 N.W. 11th Avenue
Miami, Florida 33136

Donald Spadero, Esq.
1000 S. Federal Highway, Suite 103
Fort Lauderdale, Florida 33316

Michael Smith, Esq.
633 S.E. 3rd Street, Suite 4F
Fort Lauderdale, Florida 33301

Alejandro Taquechel, Esq.
3750 W. 16th Avenue, Suite 238
Hialeah, Florida 33012

Thomas Almon, Esq.
321 N.E. 26th Street
Miami, Florida 33137

Manuel Gonzalez, Esq.
782 N.W. Le Jeune Road, Suite 440
Miami, Florida 33126