00-6273.rr9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6273 CR HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FREDERICK MASSARO, et al.,

    Defendants

_____/



## REPORT AND RECOMMENDATION

**This Cause** is before the Court on Defendant Frederick Massaro's Motion to Suppress Evidence Derived From Illegal Electronic Surveillance in State Proceeding, and Request for Evidentiary Hearing, and Initial Motion to Quash Search Warrants and Suppress Evidence, Wire Tap Derivative, both filed January 30, 2001. The Court has reviewed the Motions, the Response and all pertinent portions of the file.

### Facts

Defendant moves to suppress all communications and evidence derived as a result of electronic surveillance conducted with regard to the defendant that occurred from a court authorized wiretap. The initial order authorizing the interception was signed by the Honorable William P. Dimitrouleas on March 18, 2000, and authorized interception of four telephones involving Defendant's home, business and cell phone. Two subsequent orders authorized the continued interception of wire communication for a period of thirty days.

Defendant argues that the initial wiretap application was deficient in setting forth sufficient grounds for the issuing judge to have found that normal investigative procedures had been tried and

had failed, or reasonably appeared to be unlikely to succeed if tried or to be too dangerous, in accordance with 18 U.S.C. § 2518(3)(c). Defendant additionally moves for suppression of the fruits of all searches which were based on probable cause established through intercepted communications.

## Discussion

The pertinent statutory provision, 18 U.S.C. §2518, provides that each application for a wiretap must include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous...

This section does not require that "the application provide a 'comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." United States v. Nixon, 918 F.2d 895, 901 (11th Cir. 1990) (citing United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir.), cert. denied, 479 U.S. 854 (1986)). Essentially, the concern is that the Court be convinced, given the facts of the particular case, that wiretaps are not being "routinely employed as the initial step in criminal investigation." United States v. Giordano, 416 U.S. 505, 515 (1974).

In making the determination under 18 U.S.C. §2518(3)(c), the issuing judge considers the entire application, not just those paragraphs discussing need. See United States v. Landmesser, 553 F.2d 17, 20-21 (6th Cir. 1977). The judge has considerable discretion in determining whether other investigative methods might have been successfully employed. Id.; see also United States v. Daly, 535 F.2d 434, 437 (8th Cir. 1976).

Defendant makes the general argument that the affidavit contains "nothing more than a boilerplate recitation of the necessity of a wiretap." This Court has examined the affidavit finds no merit in this statement, and further finds that the affidavit sets forth numerous facts which show that

2

normal investigative methods had failed or would be unsuccessful. With respect to specifics, Defendant cites to "the obvious extreme success of the investigation up until the request for the wiretap due to the numerous confidential sources dealing with and recording Massaro and others." In the affidavit, FBI Special Agent Terry Feisthammel acknowledges that "[t]he use of confidential sources has been very valuable in developing information pertaining to defendants including the interceptees." However, Agent Feisthammel further states that even though two of the cooperating sources were willing to testify, they were "not in a position to provide complete and continued details regarding the activities of this criminal enterprise." Aff. ¶ 114.

Agent Feisthammel further states that some of the CS's were no longer working in an undercover capacity, and were not known to have any current association with the listed interceptees. Furthermore, although there still remained several CS who were cooperating, Agent Feisthammel stated that "[n]one of the confidential sources possess complete access to all the listed interceptees." Aff. ¶ 116. Similarly, Agent Feisthammel discussed the limited success of physical surveillance, in that it "failed to reveal the identity of all of the participants and failed to provide sufficient admissible evidence of specific criminal activities."

Agent Feisthammel further noted that on one occasion of surveillance of the interceptees, the interceptee actually confronted one of the agents who was following him, and that further surveillance may compromise the covert nature of the investigation and cause the participants to become more secretive in their activities. Aff. ¶¶ 117-118. Agent Feisthammel noted the same concern with respect to a possible Grand Jury investigation, and further stated that there were not, at the time, sufficient facts to determine which of the alleged conspirators, if any, should be or could be compelled to testify under a grant of immunity. Aff. ¶ 119.

Agent Feisthammel additionally acknowledged the limited value of telephone toll call

records, as well as pen registers and trap and trace techniques, which, although they provide evidence of contacts, do not reveal the content of the conversations. Aff. ¶ 123.

Defendant analogizes this case to United States v. Kalustian, 529 F.2d 585 (9th Cir. 1976), in which the Ninth Circuit held that generalizations in a wiretap affidavit based on "knowledge and experience" gained in other gambling cases that "gamblers frequently do not keep permanent records" was insufficient to justify a wiretap. Id. at 588; see also United States v. Curreri, 388 F.Supp. 607 (D. Md. 974). The Court noted that the Government had failed to make a showing why traditional investigation techniques were not sufficient "in [that] particular case." Id. at 590. Defendant argues that the affidavit in this case suffers from the same infirmity, in that SA Feisthammel made the following statement:

> From prior investigations and reports of other Agents, your affiant knows that the Gambino LCN Crime Family is extremely sophisticated in detecting and avoiding investigations by law enforcement agencies. This has made conventional investigative techniques, such as interviews, of little value.

Aff. ¶121. This Court finds Agent Feisthammel's statement distinguishable from the situation the Court was concerned with in Kalustian. In that case, there was no indication that the agent was familiar with the particular organization under investigation, whereas in this case, Agent Feisthammel stated that he had specific experience with the Gambino LCN Crime Family, and was aware of its techniques, rather than general experience with bookmaking operations.

In his Order of March 18, 1999, Judge Dimitrouleas noted that the objectives of the investigation were

> [To] reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal the full identities of the participants, co-conspirators and victims, the precise nature and scope of the enterprise and illegal activity, the individual acts committed by aiders, abettors and co-conspirators, the extent of their participation in these offenses, their places of operation, the locations where

> physical evidence is being stored, the locations and persons to which proceeds derived from criminal activity is transmitted, and the full scope and nature of the conspiracies involved therein ...

Based on this description, Judge Dimitrouleas reasonably exercised his discretion in authorizing the initial wiretaps and subsequent extensions, based on the limitations of the above alternative techniques to provide such detailed information.

### Recommendation

Accordingly, this Court respectfully recommends that the Motion to Suppress Evidence Derived From Illegal Electronic Surveillance in State Proceeding, and Request for Evidentiary Hearing, and Initial Motion to Quash Search Warrants and Suppress Evidence, Wire Tap Derivative be **DENIED**.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Paul C. Huck, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 10th day of September, 2001 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc: Honorable Paul C. Huck
    counsel on attached list

Lawrence D. LaVecchio, Esq. (AUSA)
Richard Houlihan, Esq.
Samuel Deluca, Esq.
Jeffrey Weinkle, Esq.
Donald Spadero, Esq.
Michael Smith, Esq.
Fred Haddad, Esq.
Albert Levin, Esq.
Thomas Almon, Esq.
Manuel Gonzalez, Esq.
William D. Matthewman, Esq.
Christopher A. Grillo, Esq.